**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**RONALD DUGAS (#314846)**                      **CIVIL ACTION NO.**

**VERSUS**                                                  **21-530-BAJ-EWD**

**DARREL VANNOY, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 27, 2024.

                                                       **ERIN WILDER-DOOMES**
                                                       **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RONALD DUGAS (#314846)                                CIVIL ACTION NO.

VERSUS                                                21-530-BAJ-EWD

DARREL VANNOY, ET AL.

## MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, and ORDER

Before the Court is a Motion for Summary Judgment ("Motion"), filed by Defendants Christopher Harrell and Damon Turner (collectively "Defendants").[1] Ronald Dugas ("Plaintiff") did not file a timely opposition memorandum to the Motion; however, he did untimely file his own Motion for Summary Judgment that responds to arguments raised in the Motion.[2] As Plaintiff is representing himself, his arguments will be considered. Because Plaintiff's claims are time-barred, it is recommended that Defendants' Motion be granted, that Plaintiff's Motion be denied, and that the case be closed.

### I. BACKGROUND

Plaintiff filed this suit on September 9, 2021 alleging claims under 42 U.S.C. § 1983 for violations of his constitutional rights by several Defendants.[3] Some claims were severed from this action and others were dismissed so that the only claims remaining in this case are Plaintiff's claims against Damon Turner in his individual capacity for monetary damages for an alleged act of excessive force occurring on January 25, 2020, and the corresponding claim against Christopher Harrell in his individual capacity for monetary relief for failure to intervene.[4]

---

[1] R. Doc. 77.
[2] R. Doc. 80.
[3] R. Doc. 1.
[4] R. Docs. 8, 9, 10, 45.

## II.  LAW & ANALYSIS

### A. Standard of Review

Summary judgment is proper where there is no genuine disputed issue as to any material fact, so that the moving party is entitled to judgment as a matter of law.[5]  A party moving for summary judgment must explain the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show there is no genuine issue of material fact.[6]  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which shows that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[7]  Summary judgment must be entered against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[8]  In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party and may not evaluate the credibility of witnesses, weigh the evidence, or resolve material factual disputes.[9]

### B. Plaintiff's Claims are Time-Barred

Defendants correctly argue that Plaintiff's claims are subject to dismissal because they are prescribed.[10]  "There is no federal statute of limitations for actions brought pursuant to 42 U.S.C. § 1983," so the federal courts borrow the limitations period of the forum state.[11]  Civil rights suits

---

[5] Fed. Rule Civ. P. 56.  *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[6] *Celotex Corp.*, 477 U.S. at 323.
[7] *Anderson*, 477 U.S. at 248.
[8] *Celotex Corp.*, 477 U.S. at 323.
[9] *International Shortstop, Inc. v. Rally's, Inc*., 939 F.2d 1257, 1263 (5th Cir. 1991).
[10] R. Doc. 77-1, pp. 6-8.  Because Plaintiff's claims are prescribed, Defendants' other arguments in support of summary judgment are not reached.
[11] *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). *See also, Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) ("Federal courts borrow state statutes of limitations to govern claims brought under section 1983."); *White v.*

brought under § 1983 before July 1, 2024, are subject to the Louisiana limitations period of one year that applies to tort claims.[12] State law also controls whether events occur that toll (*i.e.*, pause or delay) the limitations period unless the state provisions regarding tolling are inconsistent with federal law.[13] Though the Louisiana prescriptive period of one year applies to Plaintiff's civil rights claims, federal law governs when his claims accrued, *i.e.*, when the limitations period starts.[14] Under federal law, a claim generally accrues "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured" and that there is a connection between his injury and the defendant's actions.[15] "A plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim."[16]

The incident giving rise to Plaintiff's claims happened on January 25, 2020.[17] Plaintiff filed suit on September 7, 2021, 590 days later.[18] However, because Plaintiff was required to

---

*Gusman*, 347 Fed.Appx. 66, 67 (5th Cir. 2009) (unpublished) ("The prescriptive period for a claim brought under § 1983 is provided by the law of the state in which the claim arose.").

[12] La. C.C. art. 3492; *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002); *Crane v. Childers*, 655 Fed.Appx. 203, 204 (5th Cir. 2016) (§ 1983 claims are subject to the one-year prescriptive period for tort claims). Effective July 1, 2024 the prescriptive period for tort claims in Louisiana is extended to two years and La. C.C. art. 3492 will be repealed. 2024 La. Sess. Law Serv. Act 423 (H.B. 315) (WEST). For Plaintiff's claim, filed in September 2021, the one-year prescriptive period applies.

[13] *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484 (1980).

[14] *Harris*, 198 F.3d at 157.

[15] *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (internal quotation marks and citations omitted).

[16] *Id.*, citing *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

[17] On January 24, 2020, Plaintiff had an encounter with Harrell, but the facts underlying the claims remaining in this case did not occur on January 24, 2020; rather, the incident at issue occurred on January 25, 2020. R. Docs. 9, 10, 49, 52.

[18] Here, Plaintiff is not entitled to benefit from the prison mailbox rule, which provides that an unrepresented inmate's pleading is considered filed when the document is placed in the prison mailing system. *See Medley v. Thaler*, 660 F.3d 833, 835 (5th Cir. 2011). The burden is on the inmate to show when his pleading was given to prison officials for delivery to the court. *United States v. Duran*, 934 F.3d 407, 412 (5th Cir. 2019). Generally, the signed date on a filing is presumed to be the date on which it is handed to officials. *See Colarte v. Leblanc,* 40 F.Supp.2d 816, 817 (E.D.La. 1999). However, when enough time passes between the signature date and the postmarked date, the inmate may not be entitled to benefit from the prison mailbox rule, unless he puts forth sufficient evidence to demonstrate that he actually delivered the document on a certain date to prison officials. *See Duran*, 934 F.3d at 412; *Cunningham v. Bradley*, No. 17-169, 2019 WL 208880, at *2 (N.D. Miss. Jan. 15, 2019) (when there is a reasonable delay of a few days between the signature date and the date the court receives the pleading, the court presumes the filing was delivered to prison officials on the date it was signed; however, when there is an unreasonable delay, and there is no additional

exhaust administrative remedies by filing a grievance through the administrative remedy process ("ARP") before filing suit, the limitations period is suspended while an ARP is pending.[19] The limitations period begins to run again when the final agency decision on the ARP is delivered.[20]

Plaintiff's ARP related to his claims in this case is dated February 18, 2020.[21] At that time 23 days had passed that count towards the one-year prescriptive period.[22] The ARP was denied at both steps,[23] and Plaintiff received the second step response on August 5, 2020.[24] Even giving Plaintiff the benefit of not starting the "clock" again until he received his second step response,[25] another 397 days passed between when the limitations period began running again on August 6, 2020, and when Plaintiff filed suit on September 7, 2021. This means that a total of 420 days that

---

proof that the inmate delivered the document on the signed date, the court will not use the signature date as the date filed). Though Plaintiff's pleading is signed May 24, 2021, it was not stamped by prison officials until September 7, 2021 (R. Doc. 1, p. 12) and was not postmarked until September 8, 2021. R. Doc. 1, p. 11. The Court also notes that the Statement of Account attached to Plaintiff's Motion to Proceed In Forma Pauperis that was docketed on the same day as the Complaint was stamped certified by a prison official on August 24, 2021 (R. Doc. 2, p. 4), which indicates that both filings were delivered to prison officials much later than May 24, 2021. Because of the significant discrepancy between the signature date on the Complaint and the postmarked date, coupled with other facts including the date the Statement of Account was certified and the lack of evidence of significant delay in other filings, Plaintiff will not be afforded the benefit of the prison mailbox rule. *See Duran*, 934 F.3d at 413 (prisoner "cannot benefit from the prison 'mailbox rule' in the absence of evidence to establish when the pleading was handed to prison officials); *Holliman v. Lumpkin*, No. 23-950, 2023 WL 6612511, at *1 (S.D. Tex. Oct. 10, 2023) (using the postmarked date of September 23, 2022 as the filed date instead of the signed date of September 6, 2022 because the prisoner did not certify the date on which he placed it in the prison mailing system); *Cunningham*, 2019 WL 208880, at *2 (18 month delay between signature of petition and receipt was unreasonable; the court considered that there was no evidence of delay between signature date and filing date of other filings in the record). Accordingly, the Report and Recommendation uses the date the Complaint was stamped by officials at LSP as the filing date.

[19] La. Civ. Code art. 3467; *Kron v. LeBlanc*, No. 11-2263, 2013 WL 823550, at *2 (E.D. La. March 6, 2013).
[20] La. R.S. 15:1172(E) (providing that the limitations period for a prisoner's claim "shall be suspended upon the filing of [an administrative] … grievance and shall continue to be suspended until the final agency decision is delivered.").
[21] R. Doc. 77-4, p. 3.
[22] When calculating time, the date that triggers the time period is not counted. Fed. R. Civ. Proc. 6(a)(1)(A). The Court's calculation also excludes the last day of the time period. In other words, *e.g*, because Plaintiff filed an ARP on February 18, 2020 that date is not included when counting the number of days.
[23] R. Doc. 77-4, pp. 6 & 193-194.
[24] R. Doc. 77-4, p. 194.
[25] Arguably, the clock should have started again after the ARP was pending for 90 days, at which time Plaintiff could have unilaterally filed suit. Louisiana Administrative Code, Title 22, Part I, § 325 provides that "[n]o more than 90 days from the initiation to completion of the [administrative remedy process] shall elapse, unless an extension has been granted. Absent such an extension, expiration of response time limits shall entitle the offender to move on to the next step in the process."

4

count toward the limitations period passed before suit was filed, so that Plaintiff's claims are time-barred and subject to dismissal with prejudice.

Plaintiff argues that the only days that count towards the prescriptive period are days that are not weekends nor legal holidays.[26] Plaintiff is mistaken—all days count towards the running of the prescriptive period. Weekends and legal holidays only factor into the counting of days when the final day of the prescriptive period falls on a weekend or legal holiday, in which case, the deadline is extended to the next day that is not a legal holiday.[27] Once Plaintiff received the second step response, he only had 342 days left to file suit. In other words, since he received the second step response on August 5, 2020, Plaintiff had until July 14, 2021 to file suit. Because he did not file suit until September 7, 2021, his claims are subject to dismissal, unless extraordinary circumstances exist.

Plaintiff argues that beginning on or about June 8, 2021, he had a facial surgery that impaired his vision "for at least 90 days," so he should be allowed to proceed with this suit on the merits due to "extra-ordinary circumstances."[28] Plaintiff has not advanced a legal theory to support this argument, but under Louisiana law, Plaintiff's argument implicates the principle of *contra non valentem*. The Louisiana Supreme Court has held that, under Louisiana law, a prescriptive period

---

[26] R. Doc. 80, pp. 10-11.
[27] Fed. R. Civ. Proc. 6(a)(1) provides (emphasis added):
(a) Computing Time. The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.

> (1) Period Stated in Days or a Longer Unit. When the period is stated in days or a longer unit of time:
>
>> (A) exclude the day of the event that triggers the period;
>>
>> (B) *count every day, including intermediate Saturdays, Sundays, and legal holidays*; and
>>
>> (C) *include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.*

[28] R. Doc. 80, p. 11.

5

may be suspended or interrupted under "the principle that prescription does not run against a party who is unable to act."[29] *Contra non valentem* applies in the following four circumstances:

> (1) where there was some legal cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action; (2) where there was some condition or matter coupled with the contract or connected with the proceedings which prevented the plaintiff from availing himself of his cause of action; (3) where the defendant has done some act effectually to prevent the plaintiff from availing himself of his cause of action; (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.[30]

Though a stretch, the only provision that might apply based on Plaintiff's argument is "(3) where the defendant has done some act effectually to prevent the plaintiff from availing himself of his cause of action." According to Plaintiff, Defendants provided him with a necessary facial surgery in June 2021 that impaired his vision for at least 90 days. First, Plaintiff has not provided evidence to show that he was *prevented* from filing his suit because of the surgery when he had almost eleven months *before* his surgery to file suit, but did not do so. Further, the advantage of *contra non valentem* does not seem to be available for a situation like the one presented here. The United States Court of Appeals for the Fifth Circuit, which this Court is bound to follow, has found that the argument that "the prescriptive period must be suspended in other instances of hospitalization, surgery, or medication…would directly contravene the principle that *contra non valentem* is to be strictly construed and limited to exceptional circumstances."[31] Plaintiff's medical records were filed in connection with the notice of compliance in this case.[32] According to those

---

[29] *Crane v. Childers*, 655 Fed.Appx. 203, 204 (5th Cir. 2016) (internal quotation marks and citations omitted), quoting *Corsey v. State*, 375 So.2d 1319, 1321 (La. 1979).
[30] *In re Taxotere (Docetaxel) Products Liability Litigation*, 995 F.3d 384, 390 (5th Cir. 2021), citing *Morgan v. Entergy New Orleans, Inc.*, 16-1250 (La. App. 4th Cir. 12/6/2017) 234 So.3d 113, 116, 120.
[31] *Crane,* 655 Fed.Appx. at 205 (finding exceptional circumstances did not exist where the plaintiff argued that his claim, filed one day late because he underwent surgery the day following his injuries that formed the basis for the suit, should not be time-barred based on *contra non valentum*).
[32] *See* R. Doc. 22-7.

6

records, on June 8, 2021, Plaintiff underwent surgery for a fracture to his right zygomatic arch.[33] Even if his vision were impaired for 90 days following the surgery, the high standard of exceptional circumstances to warrant the application of *contra non valentem* is not met.[34] Accordingly, the Motion filed by Defendants should be granted, and this case should be dismissed.

## RECOMMENDATION

As Plaintiff Ronald Dugas' claims in this case are prescribed, **IT IS RECOMMENDED** that the Motion for Summary Judgment,[35] filed by Defendants Damon Turner and Christopher Harrell, be **GRANTED**; that the Motion for Summary Judgment,[36] filed by Plaintiff Ronald Dugas be **DENIED**, that this action be **DISMISSED WITH PREJUDICE**, and that the case be **CLOSED**.

## ORDER

Considering the recommendation for dismissal of Plaintiff's claims in this case, **IT IS ORDERED** that the pending Motions[37] are **DENIED** without prejudice to reurging should the recommendation for dismissal not be adopted.[38]

Signed in Baton Rouge, Louisiana, on June 27, 2024.



**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[33] R. Doc. 22-7, pp. 293, 342.
[34] *See Crane*, 655 Fed.Appx. at 205 (distinguishing the situation in that from that in *Corsey v. State*, 375 So.2d 1319, 1320-21). In *Corsey*, *contra non valentem* applied because the defendant's negligence caused brain injuries to the plaintiff "that left him so mentally incapacitated … that he lacked any understanding of what happened to him and of his possible legal remedies until over a year after the injury was sustained." The facts here, like the facts in *Crane*, are not nearly as extreme as the facts in *Corsey*.
[35] R. Doc. 77.
[36] R. Doc. 80.
[37] R. Docs. 78, 81, 82.
[38] Although Plaintiff asks to stay decision on Defendants' Motion for Summary Judgment and seeks to compel medical records to support his argument that his claims are not time-barred, even assuming Plaintiff's vision was impaired for approximately 90 days following surgery in June 2021, *contra non valentum* would not save his suit, so that additional information on this issue is not necessary to resolve Defendants' prescription argument, which is the basis for the recommendation that Plaintiff's claims in this case be dismissed.